**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JASON LEOPOLD, *et al.*,<br>            Plaintiffs<br><br>      v.<br><br>OFFICE OF THE DIRECTOR OF<br>NATIONAL INTELLIGENCE, *et al.*,<br>            Defendants | Civil Action No. 16-2517 (CKK) |

**Memorandum Opinion**
(February 18, 2020)

This lawsuit arises from a Freedom of Information Act ("FOIA") request that Plaintiffs Jason Leopold and Ryan Shapiro made to Defendants the Office of the Director of National Intelligence ("ODNI"), the Central Intelligence Agency ("CIA"), the Department of State ("State"), and the Department of Homeland Security ("DHS"). Plaintiffs requested multiple categories of documents related to Russian interference in the 2016 United States presidential election. The only issue currently before the Court is Defendants' withholdings under FOIA exemption 5 which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Plaintiffs argue that the deliberative process privilege pursuant to FOIA Exemption 5 is not applicable and that documents and portions of documents are being wrongly withheld. The parties have filed cross-motions for summary judgment on the issue of the propriety of Defendants' withholdings under Exemption 5 to FOIA.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as it currently stands, including the Court's in camera review of certain documents, the Court

---

[1] The Court's consideration has focused on the following documents:

GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Cross-Motion for Summary Judgment. The Court concludes that the withheld documents and portions of documents are exempt from FOIA based on Exemption 5.

## I.    BACKGROUND

On December 14, 2016, Plaintiffs submitted FOIA requests to Defendants ODNI, CIA, State, and DHS for several categories of documents related to Russian interference in the 2016 presidential election. Am. Compl., ECF No. 4, ¶ 15. In summary form, these categories of documents included:

- Communications to or from members of the Electoral College and records mentioning or referring to a request by members of the Electoral College to receive information on Russian interference in the 2016 presidential election;
- Communications to or from Congress, political party committees, campaigns, or other political organizations on Russian interference in the 2016 presidential election;
- Communications to or from Congress or other intelligence agencies mentioning a list of terms;
- Talking points on Russian interference in the 2016 presidential election and related topics;
- Internal newsletters, magazines, or other internal publications on Russian interference in the 2016 presidential election; and
- Agency-wide emails referring to the agency's actions or position on Russian interference in the 2016 presidential election.

*Id*. On December 15, 2016, Plaintiffs supplemented their request to Defendant CIA to include:

- White papers, intelligence assessments, memoranda, and/or reports mentioning or referring to Russian interference in the 2016 presidential election;

---

- Defs.' Mot. for Summary Judgment, ECF No. [29] ("Defs.' Mot.");
- Pls.' Cross-Mot. for Summary Judgment, ECF No. [31] ("Pls.' Mot.");
- Reply Mem. in Support of Defs.' Mot. and in Opp'n to Pls.' Cross-Mot. for Summary Judgment, ECF No. [32] ("Defs.' Reply"); and
- Reply in Support of Pls.' Cross-Mot. for Summary Judgment, ECF No. [35] ("Pls.' Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

- Other records mentioning white papers, intelligence assessments, memoranda, and/or reports mentioning or referring to Russian interference in the 2016 presidential election; and
- Talking points and any guidance or other instructional records issued to the CIA's Office of Public Affairs mentioning Russian interference in the 2016 presidential election.

*Id.* at ¶ 16.

As of the date the Complaint was filed on December 26, 2016, Plaintiffs had not received a response from Defendants as to whether or not Defendants would comply with Plaintiffs' FOIA requests. *Id.* at ¶ 18, 22, 25, 27. After this lawsuit was filed, counsel for the parties conferred about the scope of Plaintiffs' FOIA requests and proposed to the Court a processing schedule. May 10, 2017 Joint Status Report, ECF No. 12. Defendants then proceeded to conduct searches and process and produce non-exempt, responsive documents. In approximately May of 2017, Defendants completed all searches in response to Plaintiffs' FOIA requests. *See* May 17, 2019 Joint Status Report, ECF No. 25. Following the completion of Defendants' searches and processing and production of documents, the parties conferred in an effort to narrow issues for judicial resolution. *Id.*

On June 14, 2019, Plaintiffs indicated that they were "not challenging the adequacy of the searches, but they intend[ed] to challenge only the withholdings under Exemptions 5 and/or 7(A), both the redactions and the withheld-in-full material. Plaintiffs also reserve[d] the right to challenge any redactions or withholdings on the grounds that the information is already in the public domain." June 14, 2019 Joint Status Report, ECF No. 26.

Defendant DHS had no withholdings based solely on Exemptions 5 and/or 7(A). Dec. of Brandan Henry, ECF No. 29-3, ¶¶ 9-12. As such, Defendant DHS does not have any withholdings at issue in the parties' cross-motions for summary judgment. Defendant ODNI did not withhold any information based on Exemption 7(A). However, Defendant ODNI did

withhold 29 documents in part and 5 documents in full based on the deliberative process privilege under FOIA Exemption 5. Dec. of Patricia Gaviria, ECF No. 29-1, ¶¶ 10-12. Defendant ODNI also withheld a portion of one set of documents under the presidential communications privilege of FOIA Exemption 5; however, Plaintiffs are not challenging that withholding. Pls.' Mot., ECF No. 31, 1 n.2. Defendant CIA did not withhold any material pursuant to Exemption 7(A) but did withhold 19 documents in full pursuant to the deliberative process privilege under FOIA Exemption 5. Dec. of Antoinette Shiner, ECF No. 29-2, ¶¶ 5, 13. Finally, Defendant State also did not withhold any material under Exemption 7(A) but withheld three documents in full or in part based on the deliberative process privilege under FOIA Exemption 5. Dec. of Eric Stein, ECF No. 29-4, ¶¶ 3, 9, 15.

Accordingly, the only issue currently before the Court is the withholdings by Defendants ODNI, CIA, and State of information pursuant to the deliberative process privilege under FOIA Exemption 5.

## II. LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 562 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made

exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (internal quotation marks and citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are ... exempt from disclosure under the FOIA." *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (internal quotation marks omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (internal quotation marks omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

Plaintiffs do not challenge the adequacy of Defendants' search for responsive records to Plaintiffs' FOIA requests. As such, the sole issue before the Court is whether or not the information withheld by Defendants ODNI, CIA, and State falls under the deliberative process privilege of FOIA Exemption 5. The Court has reviewed the parties' supporting Declarations as well as Defendants' *Vaughn* Indexes. The Court has also reviewed in camera 6 pages of documents with withholdings by Defendant ODNI. *See* ODNI documents 000048, 000049-50, 000051, 000045-46. Considering the arguments of the parties, as well as the Court's own review, the Court concludes that the withheld information falls under the deliberative process privilege of FOIA Exemption 5 and was properly withheld.

### A. FOIA Exemption 5 and the Deliberative Process Privilege

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Over the years, it has been construed as protecting "those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). It provides protection to "materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive 'deliberative process' privilege." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (internal citations omitted). In this case, Plaintiffs challenge only one recognized privilege—the deliberative process privilege.

The deliberative process privilege protects not only communications that are deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency. *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C.

Cir. 1982). This privilege is intended to protect the decision-making "'processes of the executive branch in order to safeguard the quality and integrity of governmental decisions.'" *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 147 (2d Cir. 1994) (quoting Hopkins v. Dep't of House & Urban Dev., 929 F.2d 81, 84 (2d Cir. 1991)). Discussions among agency personnel about the relative merits of various positions which may be adopted are just as a much a part of the deliberative process as the actual recommendations and advice which are agreed upon. *See Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 257 (D.C. Cir. 1977). Congress created this exception in the FOIA because it believed that forcing agencies to "operate in a fishbowl" would undermine the quality of administrative decision-making by preventing the full and frank exchange of ideas on legal and policy matters. *Mead Data*, 566 F.2d at 256 (citing to S. Rep. No. 813, 89th Cong., 1st Sess. 9, and H.R. Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966)). Consistent with congressional intent on the subject, this Circuit has construed Exemption 5 "as narrowly as consistent with efficient Government operation." *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc) (citing *Mead Data*, 566 F.2d at 256).

For the deliberative process privilege to apply under Exemption 5, this Court must determine the material to be both pre-decisional and deliberative. *Id.* at 774. "A document is pre-decisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)). At its most basic, the courts have held that a document is deliberative in nature if "it reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866. Because Exemption 5's goal is to "prevent injury to the quality of agency decisions," the deliberative process privilege can apply only to

deliberative processes the results of which are or will be agency policy. *See Petroleum Info. Corp.*, 976 F.2d at 1434. Documents containing advisory opinions and recommendations, or reflecting deliberations comprising the process by which government policy is formulated are protected. *Mead Data*, 566 F.2d at 256. Exemption 5 protection does not extend to documents that do not "discuss the wisdom or merits of a particular agency policy, or recommend new agency policy." *Coastal States*, 617 F.2d at 869.

Under the federal common law, the proponent bears the burden of demonstrating the applicability of any asserted privilege, including the deliberative process privilege. *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n WD Energy Servs., Inc.*, 439 F.3d 740, 750 (D.C. Cir. 2006). To meet that burden, the proponent must establish the claimed privilege with "reasonable certainty." *Fed. Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980). Specifically, the proponent must adduce competent evidence in support of "each of the essential elements necessary to sustain a claim of privilege." *Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 45 (D.D.C. 2000). The proponent "must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel." *In re Application of Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010). Where the proponent fails to adduce sufficient facts to permit the district court to conclude with reasonable certainty that the privilege applies, its burden has not been met. *TRW*, 628 F.2d at 213.

Plaintiffs have two arguments as to why Defendants' withholdings under the deliberative process privilege of FOIA Exemption 5 are unjustified. First, Plaintiffs contend that the withheld documents concern how to articulate policy to outside entities. And, according to Plaintiffs, "[t]he deliberative process privilege only applies to deliberations about substantive agency policy, not merely how to articulate the policy to outside entities." Pl.'s Mot., ECF No. 31, 1.

Second, Plaintiffs argue that "[e]ven if public relations matters could potentially qualify under the deliberative process privilege, the defendants' affidavits are insufficient to establish entitlement to that privilege." *Id.* at 3. The Court will address each argument in turn.

**B. Application of the Deliberative Process Privilege to Articulations of Policy**

Plaintiffs contend that the documents and portions of documents which have been withheld "are simply draft public statements or discussions about how to articulate policy decisions already made" and, as such, should not be protected by the deliberative process privilege. *Id.* at 1. Defendants argue that even if the withheld information pertains to discussions on how to articulate policy to outside entities, such information is still protected under FOIA Exemption 5 because such information reflects the decision-making process of the agencies and decisions on how to explain policies are deliberative.

The parties did not cite and the Court could not find a decision by the United States Court of Appeals for the District of Columbia Circuit deciding whether or not discussions about public statements to outside entities are protected under the deliberative process privilege. *See Am. Ctr. for Law & Justice v. United States Dep't of State*, 330 F. Supp. 3d 293, 302 (D.D.C. 2018) ("[T]he D.C. Circuit does not appear to have addressed the application of the deliberative process privilege to the formulation of an agency's public statements"). Considering the purposes of the deliberative process privilege, the Court finds that the privilege is not as limited as Plaintiffs argue. The deliberative process privilege is aimed at "protecting open and frank discussion among those who make [agency decisions] within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001). The privilege protects the "process by which governmental decisions and policies are formulated." *Sears, Roebuck & Co.*, 421 U.S. at 150. Governmental decisions and policies can include the formulation of an agency's statements to

the public and other outside entities. *See New Hampshire Right to Life v. Dep't of Health and Human Services*, 778 F.3d 43, 54 (1st Cir. 2015) (protecting documents that "deal with the Department's decision of how and what to communicate to the public, which is a decision in and of itself"). As such, the Court finds unduly restrictive Plaintiffs' argument that the formulation of an agency's public statements cannot be deliberative.

The Court's determination on this issue is supported by other district court decisions from within this Circuit. "[T]he overwhelming consensus among judges in this District is that the [deliberative process] privilege protects agency deliberations about public statements, including the use of talking points." *Am. Ctr. for Law & Justice v. United States Dep't of Justice*, 325 F. Supp. 3d 162, 171-72 (D.D.C. 2018); *see also, e.g., Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 115 (D.D.C. 2018) (finding emails on proposed talking points and other information considered for use in preparing nominees for Senate confirmation hearings protected by the deliberative process privilege); *Comm. on Oversight & Gov't Reform, U.S. House of Rep. v. Lynch*, 156 F. Supp. 3d 101, 111-12 (D.D.C. 2016) (finding that "internal deliberations about how to respond to press and Congressional inquiries … are protected by the deliberative process privilege"); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (finding the deliberative process privilege applied to communications "discuss[ing] how to respond to on-going inquiries from the press and Congress"); *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 119-20 (D.D.C. 2014) (finding that records "involv[ing] how to communicate with members of Congress ... and how to prepare for potential points of debate or discussion" were exempt from disclosure under the deliberative process privilege). In fact, Plaintiffs cite only one case from within this Circuit in support of their argument*, Mayer, Brown, Rowe & Maw LLP v. Internal Revenue Service*, 537 F. Supp. 2d 128 (D.D.C. 2008). In that case, the court

determined that the agency's draft press releases were not protected under the deliberative process privilege because the agency had failed to explain the significance of the drafts to the agency's decision-making process. *Mayer*, 537 F. Supp. 2d at 139. The *Mayer* court's decision was based on the agency's failure to properly explain its withholding; the decision does not appear to be based on a categorical rule that the deliberative process privilege cannot extend to the formulation of an agency's public statements. And, as will be explained below, the Defendant agencies in this case have adequately justified their withholdings. *See Infra* Sec. III.C.

Instead of relying on cases from within this Circuit, Plaintiffs rely predominately on cases from the United States District Court for the Southern District of New York. *See MacNamara v. City of N.Y.*, Case No. 04-cv-9216(KMK)(JCF), 2007 WL 1169204 at *5 (S.D.N.Y. Apr. 20, 2007) (finding that talking points for use by a mayor were not protected by FOIA Exemption 5); *N.Y. Times Co. v. United States Dep't of Defense*, 499 F. Supp. 2d 501, 514-15 (S.D.N.Y. 2007) (finding that talking points to aid in briefing officials were not protected by FOIA Exemption 5); *Fox News Network, LLC v. United States Dep't of the Treasury*, 739 F. Supp. 2d 515, 545 (S.D.N.Y. 2010) (finding that "[c]ommunications regarding how to present agency policies to Congress, the press, or the public" are not protected). However, these decisions by courts in the Southern District of New York, finding that agency deliberations about public statements are not protected, appear to be implicitly undercut by the United States Court of Appeals for the Second Circuit's decision in *American Civil Liberties Union v. Department of Justice*, 844 F.3d 126 (2d Cir. 2016). In that case, the Second Circuit concluded that "a set of suggested talking points concerning the legal basis for drone strikes" and "a draft proposed op-ed article that suggested some ways of explaining the Government's legal reasoning in support of drone strikes" were protected by the deliberative process privilege. 844 F.3d at 133; *see also Seife v. Dep't of State*,

298 F. Supp. 3d 592, 615-17 (S.D.N.Y. 2018) (adopting "the approach espoused by the District

of Columbia" and finding that an agency "may withhold documents that reflect agency

deliberations regarding the manner in which its policies are explained to the public").

In sum, the Court is not persuaded by the out-of-Circuit district court cases cited by

Plaintiffs and instead agrees with the weight of authority from district courts within this Circuit.

As long as communications are pre-decisional and deliberative, internal agency communications

about public statements can be protected by the deliberative process privilege. This conclusion

complies with the purpose of the deliberative process privilege which is to encourage "honest

and frank communication within the agency" unhampered by fear of public disclosure. *Coastal*

*States Gas Corp.*, 617 F.2d at 866. Agency decisions about how to present substantive policies to

the public or to other outside entities often involve sensitive deliberations. "[I]f agency

deliberations about public statements were FOIA-able, then agencies would be hamstrung in

their dealings with the press [and other outside entities], defeating the very transparency FOIA

aims to foster." *Am. Ctr. for Law & Justice*, 325 F. Supp. 3d at 172. However, the Court notes

that, in order to receive the protection of FOIA Exemption 5 through the deliberative process

privilege, defendant agencies must still provide "context about the particular press-related

deliberations at issue and cannot rely solely on conclusory labels." *Id.*

### C. Deliberative Process Privilege as Applied to Defendants' Withholdings

The Court has determined that the deliberative process privilege through FOIA

Exemption 5 can protect agency deliberations concerning the formulation of statements to

entities outside the agency. However, that determination does not end the Court's analysis. Next,

the Court must determine whether or not Defendants' submissions establish that the deliberative

process privilege applies to the withheld documents and portions of documents at issue in this

case. Analyzing each Defendants' withholdings separately, the Court finds that the withholdings were proper under FOIA Exemption 5. The Court notes that Plaintiffs do not specifically challenge any withholding by any Defendant. Instead, Plaintiffs rest on the general allegation that the agencies' declarations were insufficient.

### 1. Defendant ODNI's Withholdings

Defendant ODNI withheld in part 29 documents and withheld in full 5 documents under the deliberative process privilege of FOIA Exemption 5. Dec. of Patricia Gaviria, ECF No. 29-1, ¶ 11. Because many of the withheld documents were similar to each other, in its *Vaughn* Index, Defendant ODNI grouped the documents into 5 categories, including information such as the date and a general description of the documents as well as more detailed information which was provided in the agency Declaration. *Id.* at ¶ 12. The Court will address the deliberative process privilege as applied to each category of documents.

ODNI's Category 1 includes "[e]mail discussions between ODNI personnel and others regarding how to respond to letters and/or requests for information from members of the Electoral College." *Id.* at Ex. D. Category 2 includes "[e]mail discussions between ODNI personnel and others regarding how to respond to letters and/or requests for information from members of the Electoral College and attached drafts of proposed responses for review and comment." *Id.* Documents in Categories 1 and 2 were drafted in December 2016 in response to a December 2016 open letter from the Electoral College to the Director of National Intelligence requesting information about Russian interference in the 2016 presidential election. *Id.* at ¶ 15. Category 1 contains 5 documents of emails between select ODNI personnel about how to respond to the electors as well as one redacted email about how to respond to incoming voicemails on the topic of the electors' letter. Category 2 also consists of 5 documents of emails

between ODNI personnel about how to respond to the electors as well as an attached draft of a proposed response for review and comment. *Id.*

Considering first the intra-agency communications about how to respond to the Electoral College's request, the Court finds such documents to be pre-decisional and deliberative. At the time the emails were sent, Defendant ODNI had not made a decision as to how to respond to the electors, making such communications pre-decisional. The emails were also deliberative as they reflect "free and candid thoughts shared between the Offices of General Counsel, Legislative Affairs, and Public Affairs, and eventually the Director's Office." *Id.* at ¶ 16. The participants shared their opinions on the advantages and disadvantages of the proposed statement as well as their thoughts on what form the statement should take. The participants also provided feedback and edits on a circulated draft response. *Id.* "The emails also include discussions between the Office of General Counsel and the Director's office, seeking review and input from the [Director of National Intelligence], as well as a follow up email with the Director's thoughts and suggested revisions to the draft statement and his reasons for them, for further consideration and discussion by the group prior to finalizing a response." *Id.* The release of such communications could result in a chilling effect on the free and candid sharing of ideas between personnel at the ODNI. Moreover, disclosure would show Defendant ODNI's decision-making process in crafting a response to the Electoral College's letter.

The final remaining document from Category 1 is a redacted email about how to respond to incoming voicemails that Defendant ODNI received pertaining to the letter from the Electoral College. *Id.* at ¶ 18. The redacted information is a question from the Office of Mission Support to the Office of Public Affairs which included a proposed strategy for handling the voicemails. *Id.* Again, such information is pre-decisional as it was communicated prior to a decision as to how

to respond to the voicemails. And, the information is deliberative as it reflects the sharing of ideas and consultative process within the agency for how to respond to the voicemails.

The final remaining document in Category 2 is the draft version of a response to the letter from the Electoral College. This document was withheld in full. *Id.* at ¶ 19. "The draft version served as a discussion draft for the email discussions that took place" relating to how to respond to the Electoral College's letter. *Id.* The draft version of the response was pre-decisional because it preceded the final version of the response, which was different. *Id.* Additionally, the draft version of the response was deliberative because it involved a consultative process through which different stakeholders provided their opinions and revisions, some of which were accepted and some of which were denied. *Id.* Disclosure of the document would reveal Defendant ODNI's decision-making process, including which recommendations were ultimately not accepted. Such disclosure could chill personnel from provided candid feedback and risks providing information to the public which is incorrect or incomplete.

Accordingly, the Court concludes that the information withheld by Defendant ODNI in Categories 1 and 2 is protected by the deliberative process privilege.

The Court next considers Category 3. Category 3 contains December 2016 "[e]mail discussions about how to respond to media inquiry." *Id.* at Ex. D. Throughout late 2016, Defendant ODNI received requests for information and comment from various media members about Russian interference in the 2016 presidential election.

The first set of documents withheld under Category 3 relates to a media inquiry from a reporter asking for help with a "Russian hack reconstruction." *Id.* at ¶ 22. In response to this request, an employee with ODNI's Office of Public Affairs called the reporter. The ODNI employee then summarized his notes and thoughts from the call, as well as a proposed response,

in an email to the head of the Office of Public Affairs. *Id.* The head of the Office of Public

Affairs shared the email with and invited feedback from other ODNI personnel, including the

Front Office, the head of the Office of Legislative Affairs, and the General Counsel. The various

recipients then shared ideas regarding how to respond as well as suggested revisions to the initial

proposed response. Defendant ODNI withheld the notes pertaining to the ODNI employee's

initial call with the reporter as well as the discussion that followed about how to respond. *Id*.

The other set of documents withheld under Category 3 involves inter-agency email

communications about how to respond to a press inquiry requesting the declassification of

certain information about Russian interference in the 2016 presidential election. *Id.* at ¶ 23. The

inquiry was directed to the White House and received by a National Security Council staff

member. The staff member drafted a proposed response and strategy which was provided to

various stakeholders within the Executive Branch for comment. *Id.* The withheld information

reflects a discussion among these stakeholders as to an appropriate response to the inquiry,

including a discussion on what information could and could not be shared with the media. *Id.* at

¶¶ 23-24.

The Court finds that both sets of withheld email communications are pre-decisional. The

emails do not reflect the final response of Defendant ODNI. Instead, the communications were

sent in an effort to develop a response which could be shared with the relevant press members.

Additionally, both sets of withheld email communications are deliberative. The exchanges reveal

back-and-forth communications between personnel at ODNI and other stakeholders. The emails

were sent in an effort to revise any potential response to the media inquiries. And, in the attempt

to develop an appropriate response, multiple stakeholders shared their opinions and their candid

advice regarding strategy for these two media inquiries. Disclosure of such information risks

chilling government personnel from providing their true feedback on controversial issues. Additionally, disclosure risks causing public confusion as the communications may be materially different from the agency's actual, final response on these issues.

Accordingly, the Court concludes that the information withheld by Defendant ODNI in Category 3 is protected by the deliberative process privilege.

The Court next considers the withheld and redacted documents in Category 4. Category 4 contains four sets of documents related to discussions about multiple proposed public statements.

The first set of documents in Category 4 concern email discussions "about proposed public statements and coordination of those statements regarding steps IC [, meaning the intelligence community,] taking to keep Congress informed" about Russian interference in the 2016 presidential election. *Id.* at Ex. D. It also includes a "[p]ublic affairs summary for [the Director of National Intelligence], including mention of released public statement regarding steps IC taking to keep Congress informed." *Id.* The Court reviewed each of these unredacted documents in camera to ensure that they were properly withheld.

Having reviewed Defendant ODNI's declaration as well as the unredacted documents, the Court concludes that these communications were pre-decisional. The redacted email discussions occurred prior to any decision about Defendant ODNI's public statement on steps it was taking to keep Congress informed. And, the public affairs summary for the Director of National Intelligence recounts the decision-making process which Defendant ODNI engaged in for the purpose of developing the public statements which were later released. Additionally, the Court finds that the documents are deliberative. The email communications were part of an effort to coordinate a consistent public statement among various stakeholders in the intelligence community. *Id.* at ¶ 28. Due to the importance of the subject matter, Defendant ODNI sought

feedback and recommendations from other stakeholders as to the ODNI's public statement. *Id.*

Such coordination among agencies helps to avoid public confusion by presenting a consistent

message from the intelligence community. The public affairs summary for the Director of

National Intelligence explains the decision-making process which Defendant ODNI engaged in

to craft the public statements. Revealing such communications, including the identities of the

various stakeholders consulted, could reveal the nature of the deliberations and dissuade

stakeholders from participating in such deliberations in the future. *Id.*; *see Russell*, 682 F.2d at

1048 (explaining that the deliberative process privilege protects from exposure the agency's

decision-making process).

The second set of documents in Category 4 relates to "intra and interagency email

discussions about proposed public statement to accompany public report." *Id.* at Ex. D. The

mentioned "public report" was the January 2017 Intelligence Community Assessment: Assessing

Russian Activities and Intentions in Recent U.S. Election. *Id.* at ¶ 27. The redacted documents

are comprised of one email chain of intra-agency discussions among ODNI personnel about the

draft statement and another email chain of inter-agency discussions among Executive Branch

stakeholders about the draft statement. *Id.* at ¶ 29.

The first, internal, email chain was from ODNI's Office of Public Affairs seeking input

from ODNI's General Counsel, the head of Legislative Affairs, and others. The various

stakeholders either provided approval for the draft statement or otherwise provided substantive

input. *Id.* at ¶ 30. The Court finds that the email communications are pre-decisional as they

preceded any final decision as to a statement accompanying the public report. Additionally, the

communications are deliberative as the initial email was sent to elicit feedback on a proposed

public statement and the communications reflect the agency's decision-making process in revising that public statement.

The second, external, email chain was between ODNI's Office of Public Affairs and the related offices of the FBI and the National Security Agency. The same draft statement which was sent to personnel within ODNI was also sent to these external stakeholders, seeking their input. *Id.* at ¶ 31. Both agencies provided substantive revisions and asked questions about the reasoning behind portions of the proposed statement. *Id.* As with ODNI's internal email chain, these email communications are pre-decisional as they preceded any final decision as to a public statement accompanying the report. Additionally, the communications are deliberative as they were sent to external stakeholders in order to engage in a back-and-forth consultative process to illicit feedback and revise the proposed public statement.

The third set of documents in Category 4 includes "intra and interagency email discussions of and accompanying drafts regarding draft joint public statement by [ODNI, the FBI, and the DHS], and a draft statement to be given by the President at the same time." *Id.* at Ex. D. The proposed joint public statement concerned Russian interference in the 2016 presidential election and highlighted a Joint Analysis Report which discussed the tools and infrastructure used by Russia to target the election. *Id.* at ¶ 33. At the same time the agencies were developing their joint statement, the White House was considering and seeking input on a proposed statement which would be released simultaneously with the joint statement. *Id.* The withheld information includes email discussions about the proposed joint statement and the White House's proposed statement as well as five different drafts of the proposed joint statement. *Id.*

The email chains related to the joint public statement contain both intra- and inter-agency communications. The communications related to the proposed joint public statement and sought to ensure that the statement was consistent with any prior statements given by the agencies as well as consistent with the Joint Analysis Report while protecting intelligence methods and sources and any classified information. *Id.* at ¶ 34. The communications include clarification on language included in the proposed joint statement as well as multiple sets of suggested edits along with reasoning for those suggested edits. *Id.* at ¶ 35. The email chain related to the White House's proposed statement similarly sought feedback and input from ODNI regarding the content of the statement. *Id.*

The Court concludes that the information withheld in this set of documents was pre-decisional. At the time the communications were sent, the proposed joint statement and the proposed statement from the White House had not been finalized. Both statements remained subject to change based on the feedback received. Additionally, the Court concludes that the withheld information was deliberative. The withheld information contains drafts of the proposed joint statement as well as both intra- and inter-agency communications pertaining to requests for clarification and edits to the proposed drafts of the joint statement. The communications reflect the back-and-forth process which the ODNI and other agencies engaged in prior to a final decision on the wording and content of the joint public statement and the statement from the White House. Disclosure of such information could inhibit frank discussion and dissuade agencies from engaging in the collaborative process necessary to produce a consistent and clear statement.

The fourth set of documents in Category 4 consists of "intra and interagency email discussions regarding another potential public statement on interference in the election that

preceded the joint public statement on the Joint Analysis Report." *Id.* at ¶ 38. These email

discussions ultimately contributed to the joint public statement discussed above, rather than to a

separate public statement. As with the communications discussed above, the emails are pre-

decisional as they were written prior to a decision on the separate public statement, which was

never made, and prior to a decision on the joint public statement, which was made. Additionally,

the emails are deliberative as they reflect the consultative process engaged in to craft a public

statement. While the separate public statement was not released, the deliberations in this email

contributed to the joint public statement which was eventually released and is discussed above.

Accordingly, the Court concludes that the various sets of documents withheld by

Defendant ODNI in Category 4 are protected by the deliberative process privilege.

Finally, the Court considers the withheld and redacted documents in Category 5 of

Defendant ODNI's withholdings. Category 5 includes "[d]raft [o]ral [r]emarks for Senate Armed

Services Committee Cyber threat hearing" as well as "[i]ntra-agency email discussions regarding

draft oral remarks for [the Director of National Intelligence's] use at a Senate Select Committee

on Intelligence hearing on Russian activities in the 2016 election, and a classified briefing for the

Committee on the same subject matter." *Id.* at Ex. D. In Category 5, both sets of withheld

documents concern the ODNI's interaction with congressional oversight committees.

The first document is a draft of oral remarks by the Director of National Intelligence for

the Senate Armed Services Committee Cyber Threat Hearing on January 5, 2017. Defendant

ODNI compared these draft remarks with the actual public remarks given by the Director at the

hearing, and the draft contains information not included by the Director in his public statement.

The information from the draft which was not included by the Director in his public statement

has been withheld. *Id.* at ¶ 40. The Court finds that such withheld information is pre-decisional

because the draft was composed prior to the final decision on what information should be shared by the Director during the Cyber Threat Hearing. Ultimately, after the production of the draft oral remarks, the Director decided that the withheld information should not be part of his statement. *Id.* The Court also finds that the withheld information was deliberative. The draft remarks were prepared by ODNI personnel for potential use by the Director. They reflect the agency's consultative process in developing statements for the Director to make to the Senate Armed Services Committee. Furthermore, disclosure of the draft remarks could chill agency staff in the free exchange of ideas with the Director. And, disclosure could cause confusion about what information was actually shared by the Director at the hearing. *Id.*

The second set of documents contains intra-agency email discussions pertaining to draft oral remarks for the Director of National Intelligence to potentially use at a January 2017 Senate Select Committee on Intelligence hearing on Russian interference in the 2016 presidential election as well as talking points for a classified briefing before the same Committee on the same subject. *Id.* at ¶ 41. The email discussions between higher-level ODNI officials as well as select support staff concerned proposed content for the Director's public statements during the hearing as well as his classified statements at the briefing. *Id.* In the communications, agency personnel shared their recommendations for what information should be included in both sets of statements, provided feedback on proposed drafts, and made edits. *Id.*

The Court finds that these email communications are pre-decisional as the discussions occurred prior to any final decision as to what information should be included in the Director's public statements at the hearing and in his classified statements at the briefing. The communications and drafts do not represent the final oral statements ultimately approved of and given by the Director. Additionally, the Court finds that these email communications are

deliberative. The information contains an exchange of ideas between higher-level and staff personnel at the ODNI concerning what information should be included in the Director's public statements and in his classified briefing. The communications represent the deliberative process engaged in by staff at the ODNI in making recommendations, edits, and revisions to the proposed statements to be given by the Director. Disclosure of such information risks chilling the willingness of agency personnel to share their ideas and to provide candid edits to the ideas of others. Additionally, disclosure could cause confusion as to which statement represents the final statement by the Director. *See Judicial Watch v. Clinton*, 880 F. Supp. 1, 12-13 (D.D.C. 1995) (affirming withholding "drafts of a proposed response to a congressional inquiry"), *aff'd*, 76 F.3d 1232 (D.C. Cir. 1996).

Accordingly, the Court concludes that the information withheld by Defendant ODNI in Category 5 is protected by the deliberative process privilege.

Having considered the five categories of withheld information, the Court concludes that Defendant ODNI's declaration, as well as the Court's in camera review of certain documents, provides sufficient information to determine that the 29 documents withheld in part and the 5 documents withheld in full were properly withheld pursuant to the deliberative process privilege of FOIA exemption 5 as the withheld information is pre-decisional and deliberative.

### 2. Defendant CIA's Withholdings

Defendant CIA withheld 19 documents under the deliberative process privilege of FOIA Exemption 5. Dec. of Antoinette Shiner, ECF No. 29-2, ¶ 5. Each of the withheld documents is a draft memorandum with the exception of one document which was not labeled as a draft. *Id.* at Ex. A (see document C06697302). The various memoranda provided recommendations in anticipation of public remarks by high-level officials at the CIA, including moderated

presentations by the Director of the CIA, television interviews with the Director of the CIA, news media interviews of the Director of the CIA, and statements to be given at a conference. The memoranda also provided recommendations in anticipation of possible questions following speeches by the Director of the CIA or other high-level officials. *Id.* These recommendations reflect "pre-decisional intragency strategy, including CIA's ideas on possible topics of questioning, proposed responses, and supporting citations to applicable sources and guidance." *Id.* While the memoranda contain "potential responses or points to be made should certain queries arise," "they are not polished, final pieces or prepared remarks intended to be delivered as written." *Id.* at ¶ 15.

The Court finds that these documents are pre-decisional because they reflect "information at interim stages." *Id.* The documents contain issues and questions that agency personnel anticipated might be raised with higher-level officials in the CIA. The documents also include recommendations as to how those higher-level officials might respond to such issues and questions were they to be raised. The higher-level officials were not required to follow these recommendations. Moreover, the recommendations did not represent final agency policy, and any potential responses were not intended to be presented as written. *Id.* "The Agency's final response to a question or statement on a particular topic would be whatever was provided publicly by the [Director of the CIA], and none of the documents are transcripts or summaries or statements actually made by [him]." *Id.* Moreover, the recommendations reflected in the documents may have been further revised after the documents were crafted and prior to any public statements by higher-level officials.

The Court also finds that the documents are deliberative. The various memoranda reflect "different considerations, opinions, options, and approaches" for addressing various issues that

could be raised and require a response. *Id.* These recommendations were crafted by lower-level personnel at the CIA for potential use by higher-level officials, particularly the Director of the CIA. As such, the documents were part of an ongoing decision-making process as to what statements the CIA should publicly issue on controversial topics. The documents are all part of the CIA's decision-making process in crafting an agency-wide response to inquiries involving Russian interference in the 2016 presidential election.

Additionally, the Court agrees with Defendant CIA's assertion that the disclosure of these documents risks chilling the ability of CIA personnel to provide higher-level officials, particularly the Director of the CIA, with candid advice on the making of public statements. *Id.* at ¶ 17. If lower-level personnel fear that their recommendations and opinions will be made public, they may be deterred from providing more senior-level officials with candid advice. This risk is especially present when the senior-level officials may ultimately choose to reject or revise the recommendations which were provided to them. Such chilling would hamper the ability of senior-level officials in the CIA to become fully informed and to receive a variety of opinions on controversial topics. Moreover, because these documents reflect potential responses to questions that may never be asked, disclosure may cause agency personnel to refrain from addressing controversial topics for fear that their preliminary recommendations become the agency's only statement on an important issue.

Accordingly, the Court concludes that Defendant CIA's declaration has provided sufficient information to determine that the 19 documents were properly withheld pursuant to the deliberative process privilege of FOIA exemption 5 as the withheld information is pre-decisional and deliberative.

### 3. Defendant State's Withholdings

Defendant State withheld the entirety or portions of three documents under the deliberative process privilege of FOIA Exemption 5. Dec. of Eric Stein, ECF No. 29-4, ¶ 3. The Court finds that Defendant State has properly explained each withholding.

The first withheld document consists of December 28, 2016 unclassified "press guidance" drafted by the Bureau of European and Eurasian affairs containing "proposed talking points concerning the restriction of Russian access to properties in the United States and the designation of a set of Russian officials as *persona non grata*." *Id.* at ¶ 10. These talking points were recommendations to the Bureau of Political Affairs "concerning the statements that the Department should make about this subject and the possible answers that representatives could give to anticipated questions." *Id.* The second document is "an unclassified cable drafted by the Russia Desk within the Bureau of European and Eurasian affairs sent to U.S. diplomatic posts containing proposed talking points concerning the U.S. Government's recent responses to Russian interference in the 2016 U.S. election, which could be utilized by ambassadors or other staff at the relevant posts to interface with foreign counterparts." *Id.* at ¶ 11. The proposed talking points were "recommendations to the principals who would ultimately decide what specific statements to make on behalf of the Department and how to answer questions that arose." *Id.* The final document is a "draft of a classified paper concerning proposed statements to be made to foreign officials that was distributed to Department officials for further review and editing." *Id.* at ¶ 12. The document has tracked changes within the text, including suggested and crossed-out language. It also includes "proposals for specific diplomatic outreach to take place as well as specific proposed talking points to be used in such a conversation." *Id*. Two of the draft

proposed questions and one of the corresponding answers from the working draft document were unclassified and withheld pursuant to Exemption 5. *Id.*

All three of the documents contain "proposed talking points, anticipated questions, and proposed answers to be used by press staff or other principals speaking on behalf of the Department discussing important policy issues with the public or with foreign officials." *Id.* at ¶ 15. The Court finds that these documents are pre-decisional because they were prepared and shared prior to the occurrence of a press briefing or any other official communication which would represent a final decision on Defendant State's official position on the subject. The proposed talking points were not required to be used in the form in which they were written. And, the officials to whom they were provided could choose not to use them at all. *Id.* These documents are also deliberative because they represent the internal agency process by which the State Department crafts its statements to third parties. The proposed talking points were crafted "by lower-level subject matter experts for more senior official's preparation and potential use." *Id.; see also Judicial Watch, Inc. v. U.S Dep't of Commerce*, 337 F. Supp. 2d 146, 173-74 (D.D.C. 2004) (approving of the withholding of talking points "prepared by [government] employees for the consideration of [government] decision-makers"). The withheld information reflects which aspects of the subject matter in question lower-level subject matter experts found important or otherwise worthy of addressing. The talking points were subject to further revision and changes by senior officials prior to use. As such, they reflect the "give-and-take consultative process" by which the State Department decides how to issue statements to outside entities.

Moreover, the Court finds that Defendant State's withholdings further the purposes of the deliberative process privilege by promoting full and frank sharing of ideas among agency personnel. *Id.* at ¶ 16. Disclosure of Defendant State's deliberations regarding statements to

outside entities would not only reveal what issues the agency viewed as most important or concerning but it would also risk chilling the "free flow of internal recommendations, candid assessments, and other necessary exchanges, in which government officials are involved." *Id.* If those involved in the crafting of these proposed talking points fear public disclosure, they may be less likely to address difficult or controversial issues for fear that such issues would be emphasized for the public. The failure to address difficult or controversial issues may lead to less informed and less prepared senior officials. Moreover, there is a risk that the talking points, if disclosed, may be taken to represent the agency's final determination on a particular issue, even if the higher-level officials ultimately decided either not to follow or not to address the proposed point.

Accordingly, the Court concludes that Defendant State's declaration has provided sufficient information to determine that the three documents were properly withheld pursuant to the deliberative process privilege of FOIA exemption 5 as they are pre-decisional and deliberative.

### 4. Segregability

The Court must make a separate finding as to whether any portion of the information withheld by any of the Defendants could have been segregated and released. *Trans-Pac. Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 10027-28 (D.C. Cir. 1999). "[E]ven if the agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record[s]." *Roth v. U.S. Dep't of Justice*, 643 F.3d 1161, 1117 (D.C. Cir. 2007). Having reviewed the declarations by representatives of Defendants ODNI, CIA, and State, the Court concludes that all reasonably segregable, non-exempt information was released to Plaintiffs. *See* Dec. of Patricia Gaviria, ECF No 29-1, ¶¶ 20, 26, 39,

43 (ODNI); Dec. of Antoinette Shiner, ECF No. 29-2, ¶ 19 (CIA); Dec. of Eric Stein, ECF No. 29-4, ¶ 18 (State); *see also Johnson v. Office for U.S. Attorneys*, 310 F.3d 771, 776-77 (D.C. Cir. 2002) (finding combination of *Vaughn* index and agency declaration sufficient to fulfill agency's obligation on segregability). Any non-exempt information contained in the withheld information is "inextricably intertwined with exempt portions." Se*e Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the documents and portions of documents withheld by Defendants ODNI, CIA, and State under the deliberative process privilege of FOIA Exemption 5 were rightfully withheld as pre-decisional and deliberative. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiffs' Cross-Motion for Summary Judgment. A separate Order accompanies this Memorandum Opinion.


>                         /s/
> **COLLEEN KOLLAR-KOTELLY**
> United States District Judge